**Aronson v. Bright-Teeth Now L.L.C.**

C.P. of Allegheny County, no. AR01-6310.

*Charles S. Morrow,* for plaintiff.
*Matthew M. Pavlovich,* for defendant.

WETTICK JR., *J.,* June 19, 2002—Defendant's preliminary objections in the nature of a demurrer seeking dismissal of plaintiff's complaint are the subject of this opinion and order of court. This case raises the issue of

whether the federal Telephone Consumer Protection Act of 1991, 47 U.S.C. §227, applies to unsolicited commercial electronic mail. It appears that this issue has not been decided in any reported opinions. See David E. Sorkin, *Technical and Legal Approaches to Unsolicited Electronic Mail,* 35 U.S.F.L. Rev. 325, 357 (Winter 2001) ("the applicability of the law governing the use of facsimile machines to e-mail has never been formally adjudicated").

Plaintiff alleges that on six occasions, defendant sent unsolicited advertisements by e-mail to plaintiff's e-mail addresses. Plaintiff seeks statutory damages of $9,000 under the TCPA. Plaintiff has sued under 47 U.S.C. §227(b)(1)(C) which provides that "[i]t shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a *telephone facsimile machine.*" (emphasis added) Under 47 U.S.C. §227(b)(3), a private action may be brought to recover at least $500 in damages for each violation.[1]

Defendant contends that the TCPA does not cover e-mail. Defendant relies on the requirement that I emphasized in the previous paragraph that an unsolicited advertisement be sent "to a telephone facsimile machine." Defendant contends that an advertisement sent to an e-mail address is not an advertisement sent to a facsimile machine because an e-mail advertisement is not printed out automatically.

---

1. In *Aronson v. Fax.com Inc.,* 149 P.L.J. 157; 51 D.&C.4th 421 (2001), I ruled that the Pennsylvania state courts have jurisdiction over private causes of action created by the TCPA.

Plaintiff contends that the TCPA defines a telephone facsimile machine broadly to include e-mail. The TCPA defines a telephone facsimile machine as "equipment which has the *capacity* (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) *to transcribe text* or images (or both) from an electronic signal received over a regular telephone line *onto paper*." 47 U.S.C. §227(a)(2). (emphasis added)

Plaintiff, relying on the language in the definition of *telephone facsimile machine* that I have emphasized, contends that the controlling question is whether the equipment receiving the e-mail has the "capacity" to transcribe the text onto paper. In this case, we know that plaintiff's equipment had this capacity because plaintiff's pleadings include papers onto which the text was transcribed.

Defendant offers the following response to this contention: E-mails are not covered by the TCPA because plaintiff had the opportunity to delete the e-mails but, instead, voluntarily sent them from his computer to his printer. Since plaintiff had to intervene in the process of sending e-mails to his printer, his computer does not qualify as a telephone facsimile machine.

David E. Sorkin, *Unsolicited Commercial E-Mail and the Telephone Consumer Protection Act of 1991*, 45 Buff. L. Rev. 1001, 1003-12 (1997), describes the differences between telephone facsimile machines and e-mail. A conventional fax machine scans a printed document, dials a telephone number which connects it to another fax machine, and transmits a digitally encoded document

image to the other machine. The other machine prints out a copy of the document. It typically requires 30 seconds to one minute to transmit each page. The recipient cannot use its fax machine until the incoming fax has been received and printed. The recipient provides the paper and ink or toner needed to produce the printed copy of the document. The recipient also bears the cost of wear and tear on its fax machine and incurs administrative costs in handling the incoming documents and keeping the machine supplied with paper and toner. This article states that the cost of printing each page with a modern machine is between four cents and 12 cents.

An e-mail message is a computer file transferred from one computer to another. A computer can send and receive e-mail messages over an ordinary telephone line using a modem. E-mail can also be exchanged among computers on a local area network or between separate networks that are interconnected. Virtually every computer system on the market today, if connected to a printer, has the capacity to print.

Unwanted e-mail does not impose the same burdens on the recipient as unsolicited fax advertising. The transmission of unwanted e-mail does not usually interfere with the recipient's ability to use its computer system because unwanted e-mail does not interfere with receiving or sending other e-mail messages or the operation of other programs. Unwanted e-mail can be deleted before it is opened, read, or printed; unwanted e-mail will not be printed unless the recipient directs that it be printed.

Unwanted e-mail creates other burdens. Mass advertising by email is virtually free. Thus, recipients may be

receiving on a daily basis large numbers of unwanted e-mail. This means that recipients may be required to spend substantial time sorting, reading, and deleting unwanted e-mail. In many instances, an e-mail cannot be deleted without examining the text of the message because the sender uses a vague or misleading subject line. Unwanted e-mail may preclude a business from promptly responding to desired e-mail because of the time spent deleting unwanted e-mail. Internet service providers incur substantial expenses (that are eventually passed on to their customers) caused by the volume of unsolicited e-mail, including the need for additional bandwidth, additional storage, and additional staff. See generally, Congressman Gary Miller, *How to Can Spam*, 2 Vand. J. Ent. L. & Proc. 127 (Western 2000).

While the TCPA's definition of *telephone facsimile machine* can be read to include most personal computers in use today, it appears that Congress, by regulating only unsolicited advertising that would be transcribed onto paper, was concerned with recipients receiving paper they did not want. If this is so, the definition of *telephone facsimile machine* should not be construed to reach messages that the recipient must choose to transcribe onto paper. The question of whether unsolicited e-mail advertisements are covered by the TCPA cannot be resolved simply by concluding that the definition of *telephone facsimile machine* is broad enough to include unsolicited e-mail sent to a computer system which permits the recipient to transcribe the text onto paper. The controlling issue is whether Congress intended for the definition to receive such a broad interpretation.

In construing any legislation, the most basic rule of construction is that words should receive their usual and ordinary meaning unless there is a clear indication that the legislature intended for the words to be used in a different fashion. If *telephone facsimile machine* is given its ordinary meaning, legislation making it unlawful to send unsolicited advertisements to a *telephone facsimile machine* would not cover unsolicited commercial e-mail.[2] Consequently, the TCPA should be restricted to what it describes—unsolicited faxes—unless there is a clear indication that Congress, through legislation making it unlawful to send advertisements to a telephone facsimile machine, sought also to regulate unsolicited advertisements sent by e-mail.

There is nothing in the TCPA's legislative history indicating that the prohibition against sending unsolicited advertisements to a telephone facsimile machine was intended to cover e-mail. The legislative history of the TCPA discusses only certain unsolicited telephone solicitations (addressed in other provisions within the TCPA) and unsolicited fax advertising. Unsolicited commercial e-mail is never mentioned. See Gary S. Moorefield, *Spam—It's Not Just for Breakfast Anymore: Federal Legislation and the Fight to Free the Internet*

---

2. See Sorkin, *Unsolicited Commercial E-Mail and the Telephone Consumer Protection Act of 1991, supra,* 45 Buff. L. Rev. at 1013:

"Perhaps the strongest argument against such a broad interpretation of the TCPA is based upon common sense: The ordinary, commonly understood meaning of 'telephone facsimile machine' includes neither computers nor electronic mail. Congress almost certainly did not even consider the statute's applicability to e-mail; the breadth of the statutory definition thus seems inadvertent." (footnote omitted)

*from Unsolicited Commercial E-Mail,* 5 B.U.J. Sci. & Tech. L. 10, 24 (footnote omitted) (Spring 1999) ("[T]he TCPA's legislative history lacks any Congressional intent to limit computer-to-computer transmissions."); Sorkin, *supra,* 45 Buff. L. Rev. at 1016 (footnote omitted) ("Although e-mail was widely known by 1991 and unsolicited e-mail was already becoming a nuisance, e-mail is not even mentioned in any of the congressional reports or testimony related to the TCPA. Nor is there any explanation of the statutory definition of 'telephone facsimile machine.' ").[3]

Also, the legislative history includes descriptions of the burdens imposed by the unsolicited fax advertising that Congress intended to address: advertising that (1) shifts advertising costs to the recipient because the advertisement is printed by the recipient's machine and (2) occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages. These are not burdens created by unsolicited e-mails.

A reading of section 227(b)(1)(C) of the TCPA to reach only fax solicitations is consistent with the legislative history following the enactment of the TCPA. Over the past two years, more than a dozen bills have been proposed to regulate unsolicited commercial electronic mail.[4] Both the extent of the legislative activity and the sponsors' lack of success are consistent with an interpreta-

3. Most of the legislative history addresses the regulation of certain unsolicited telephone calls.

4. See legislation described in *Moorefield, supra,* 5 B.U.J. Sci. & Tech. L. at 24-34; and defendant's submission titled *Appendix of Representative Current Congressional Bills* (107th Congress) [downloaded from www.access.gpo.gov].

tion of the TCPA to cover only telephone and fax solicitations.

In addition, there is language within other provisions of the TCPA which indicates that the term *telephone facsimile machine* was not intended to include unsolicited e-mail advertising. Section 227(b)(1)(C) states that it is illegal "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement . . . ." If the definition of a telephone facsimile machine includes a computer, this section would have referred only to a "telephone facsimile machine or other device." Section 227(d)(2) requires that each telephone facsimile machine transmission be marked on at least the first page with the time and date of transmission, the name of the sender, and the sender's telephone number. Generally, e-mail does not have pages. See *Sorkin, supra,* 45 Buff. L. Rev. 1014.

Finally, under *Central Hudson Gas & Electric Corp. v. Public Service Com.,* 100 S.Ct. 2343, 2350-51 (1980), and *Board of Trustees v. Fox,* 109 S.Ct. 3028 (1989), a restriction on commercial speech violates the constitution unless the restriction implements a substantial governmental interest, directly advances that interest, and is narrowly tailored to achieve the desired objective. Courts generally look to the legislative history to determine whether the *Central Hudson* criteria have been met. Thus, Congress would not have intended for the courts to construe the TCPA to cover unsolicited commercial e-mail unless it had created a legislative record to support the constitutionality of such legislation.

See *Destination Ventures Ltd. v. Federal Communications Commission,* 844 F. Supp. 632 (D. Or. 1994), *aff'd,*

46 F.3d 54 (9th Cir. 1995), where advertisers who used fax advertising challenged the constitutionality of the provisions of the TCPA prohibiting unsolicited fax advertisements.[5] The court upheld the constitutionality by looking at the legislative history which included discussions that the costs of both using the machine and the paper to print out the messages were borne by the recipient, regardless of the recipient's interest in the product or service being advertised, and that a fax machine is unable to process business communications whenever it is printing an unsolicited advertisement.

Compare *Missouri v. American Blast Fax Inc.,* no. 00CV933, 2002 WL 508330 (E.D. Mo. 2002), where the court ruled that the provisions of the TCPA prohibiting unsolicited fax advertisements violated the First Amendment's guarantee of freedom of speech. The court found that the government had not met the *Central Hudson* requirements, because the legislative history of the TCPA is "full of studies and statistics related to unsolicited phone calls, however, the reports are glaringly void of any statistical data in reference to unsolicited fax advertisements." *Id.* at *9.

In the present case, there is nothing in the legislative history that would justify the regulation of unsolicited commercial e-mail. Because the regulation of commercial e-mail raises First Amendment issues and because the government bears the burden of identifying a sub-

5. On appeal to the Ninth Circuit, the plaintiffs did not contest that the government had a substantial interest in preventing the shifting of advertising costs to the consumer. The only issue that the court addressed was whether there was a "reasonable fit" between this interest and the ban on fax advertisements.

stantial interest in regulating commercial speech, the TCPA should be construed only to cover those matters that the legislative history addressed.

For these reasons, I enter the following order of court:

## ORDER

On June 19, 2002, it is hereby ordered that defendant's preliminary objections are sustained and plaintiff's complaint is dismissed.